## COMMONWEALTH *vs.* JOHN M. HINE, JR.

Worcester.   October 3, 1984. — December 19, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Evidence*, Admissions and confessions. *Practice, Criminal*, Admissions and confessions, Dismissal, Conduct of government agents.

On a motion to suppress statements made by the defendant to police officers, evidence warranted the judge's finding that the defendant's signature on a printed waiver of Miranda rights had been forged. [568]

At a hearing on a motion to suppress statements made by the defendant to police officers three days after an initial police interview, and following his arrest, the judge was warranted in concluding, on conflicting evidence, that the defendant had not been given Miranda warnings on the day he made the statements and that, consequently, those statements must be suppressed. [568-569]

A judge, having found that police officers had forged the defendant's signature on a card to indicate waiver of his Miranda rights, properly suppressed the card from evidence; however, the judge erred in suppressing statements made by the defendant to police officers on the day he was claimed to have signed the card, inasmuch as the judge had found no connection between the police misconduct and the statements made by the defendant. [569-570]

The judge in a criminal case properly denied the defendant's motion to dismiss the indictment, based on police misconduct in forging the defendant's signature on a card to indicate waiver of his Miranda rights, where the judge suppressed the card from evidence and found that the "Miranda card misadventure" had not prejudiced the defendant's rights. [570-573]

INDICTMENT found and returned in the Superior Court Department on June 8, 1983.

A motion to suppress evidence was heard by *Robert V. Mulkern*, J. Applications for interlocutory appeal filed in the Supreme Judicial Court for the county of Suffolk were allowed by *Lynch*, J., and the appeal was reported by him.

*Daniel F. Toomey*, Assistant District Attorney, for the Commonwealth.

*Bernard Grossberg* for the defendant.

HENNESSEY, C.J. The defendant was indicted on June 8, 1983, for the murder of Angel Figueroa. After a hearing, a judge in the Superior Court allowed the defendant's motion to suppress evidence of oral statements the defendant had made to State police officers on April 2 and 5, 1982. The Commonwealth subsequently filed an application for interlocutory appeal of this decision, and the defendant filed a cross application for interlocutory appeal of the judge's decision not to dismiss the indictment for prosecutorial misconduct. Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979). A single justice of this court granted both applications and referred them to the full bench for determination. We conclude that there was no error in the judge's suppression of a "Miranda card" and admissions made by the defendant on April 5, and no error in the judge's refusal to dismiss the indictment. However, there was error in the judge's suppression of admissions made by the defendant on April 2.

The facts are summarized as follows. Preliminary investigation into the death of Angel Figueroa led State police to suspect that the defendant had been involved in the killing. On April 2, 1982, in response to a message from police left with his wife, the defendant went alone to the State Police Crime Prevention and Control Office (CPAC) in Worcester. There the defendant was taken into an interview room where initially four officers were present: Lieutenant DeFuria, Sergeant Doheny, and Troopers McDonald and Farrell. Prior to interrogation Trooper McDonald read the defendant his Miranda rights from a printed card. The card contained the warnings police are required to give prior to custodial interrogation under *Miranda* v. *Arizona*, 384 U.S. 436, 478-479 (1966), and indicated a place for the defendant to sign signifying his voluntary waiver of those rights. The judge found that the defendant made a voluntary, intelligent, and noncoerced oral waiver of his rights. At that point, Sergeant Doheny left the room. The remaining three officers testified that the defendant then signed the Miranda card in their presence, thereby confirming his

previous voluntary waiver of rights.[1] However, the motion judge found that the signature on the card, purporting to be that of "John Hine," was not written by the defendant. The defendant was subsequently questioned by Troopers McDonald and Farrell for about one hour. In the course of this interview he denied any involvement in the murder but made statements that would be inculpatory if admitted at trial.[2] The judge found that the defendant was not in "police custody" during the interrogation on April 2 and left the CPAC office of his own volition. Before the defendant departed, he was asked but refused to sign notes taken by Trooper McDonald containing the defendant's statements.

The police then advised the defendant's parole office of the substance of his April 2 admissions and a parole violation warrant was issued. Pursuant to that warrant, the defendant was questioned again by Troopers McDonald and Farrell on April 5 at the CPAC office. The motion judge found that the defendant was in custody on this occasion but that he was not advised of his Miranda rights. The defendant was accompanied to the interrogation by his attorney at the time, Mr. Walter A. Rojcewicz. Relying upon Trooper McDonald's notes of April 2, Mr. Rojcewicz asked the defendant if the statements attributed to him were accurate. The defendant allegedly verified his April 2 statements. The parole revocation warrant was then served upon the defendant and he was taken to the Worcester County house of correction. He was subsequently indicted for the murder of Figueroa.

At the motion hearing the defense produced a handwriting expert, Catherine A. Cusack. She testified, based upon a comparison of the signature on the April 2 Miranda card with six random samples of the defendant's signature, that in her opinion "John M. Hine did not sign the Miranda warnings." She char-

---

[1] Lieutenant DeFuria testified that he left the room after seeing the defendant sign the card and Trooper McDonald sign as a witness. According to Troopers McDonald and Farrell, the latter then signed the card as a second witness to the defendant's signature.

[2] The defendant admitted to inducing the victim from his home and delivering him to one Eddy Rivera in exchange for "a spoon and a half of heroin."

acterized the signature on the April 2 card as "an attempt to copy [the defendant's] signature."

Finding the testimony of the Commonwealth's handwriting expert "largely supportive" of Cusack's conclusions, the motion judge found that the signature on the card was "not placed there by the defendant." As a result of the "serious impropriety" of the police with regard to the Miranda card, the judge granted the defendant's motion to suppress evidence of his April 2 admissions. He did not, however, credit the defendant's allegations that he had neither received nor waived his Miranda rights during the April 2 encounter. The judge found that the defendant was advised of his Miranda rights before he made the admissions of April 2.

Despite contrary testimony of Troopers McDonald and Farrell, the judge found that the defendant was not advised of and did not waive his Miranda rights prior to the April 5 interrogation. For that reason and because the judge found the defendant's April 5 adoption of his prior statements to be "tainted" by the "Miranda card misadventure," he suppressed the April 5 admissions as well. In issuing his rulings the judge conceded that "in the totality of these findings, no prejudice to the defendant may be directly pointed out." He explained that he chose to suppress the defendant's admissions, rather than impose a lesser or greater sanction, in an attempt "to strike a balance between the competing interests of the citizenry in the enforcement of the criminal law, and the absolute requirement that that enforcement be fair and without the taint which I have been compelled to find here."

On appeal the Commonwealth contends that: (1) the judge erred in finding that the signature on the April 2 Miranda card was not that of the defendant, and (2) even if the evidence warranted that finding, the statements are admissible because they were obtained after the defendant had received and validly waived his Miranda rights. The Commonwealth also challenges the judge's findings that the defendant was not advised of and did not waive his Miranda rights prior to his custodial interrogation on April 5, 1982. The Commonwealth concedes that if we accept these findings, the judge's decision to exclude the

defendant's April 5 admissions, as required by *Miranda*, must stand.

1. *The Judge's Subsidiary Findings.*

The Commonwealth claims error in the judge's subsidiary findings as to both the April 2 and April 5 interrogations. At the same time, the Commonwealth recognizes the well-established principle of appellate review that subsidiary findings of fact by the judge below will be accepted absent clear error. *Commonwealth* v. *Aarhus*, 387 Mass. 735, 742 (1982). *Commonwealth* v. *White*, 374 Mass. 132, 137 (1977), aff'd by an equally divided Court, 439 U.S. 280 (1978). We have often stated that "[t]he determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court." *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980), and cases cited.

As to the April 2 interview, the Commonwealth claims the evidence did not warrant the judge's finding that the defendant did not sign the Miranda card. According to the Commonwealth, the judge misconstrued the testimony of its handwriting expert, John Swanson, which the judge characterized as "largely supportive" of defense expert Cusack's testimony. While in Cusack's opinion the defendant's signature was forged, Swanson stated that he could not express an opinion as to the authenticity of the signature because a faulty pen was used which could have distorted the writing. Swanson, however, did testify that he agreed with Cusack's comparison of the writing samples in all respects but one.[3] We perceive no "clear error" in the judge's characterization of Swanson's testimony and his conclusion that the defendant did not sign the Miranda card.

We are also urged by the Commonwealth to set aside the judge's assessment of the conflicting testimony regarding the events of April 5. Under the well-established principles shown

[3] In Swanson's opinion, the signature on the card and the defendant's signature contained some of the same "unconscious writing strokes." However, he agreed the signature differed as to slants, stops, extra strokes, and spacing.

above, it is clear that the judge, in accordance with his duties, assessed the credibility of the witnesses and was warranted in reaching the factual conclusions that he entered in the record. Accordingly, there was no error in the judge's conclusion that, on April 5, Miranda warnings had not been given to the defendant and that the defendant's admissions on that date must be suppressed.

2. *The Exclusion of the Admissions of April 2.*

We agree with the Commonwealth that it was error for the judge to exclude the admissions made by the defendant on April 2. We note at the outset that, according to the judge's findings, the defendant was not in custody on April 2, 1982. Therefore, the interrogating officers were not required to issue Miranda warnings. *Oregon* v. *Mathiason*, 429 U.S. 492, 494-495 (1977). *Commonwealth* v. *Bryant*, 390 Mass. 729, 736 (1984). See *Commonwealth* v. *Haas*, 373 Mass. 545, 551-552 (1977). Nonetheless, the judge found that the defendant was advised of and did validly waive his Miranda rights. Even if we were to assume that it was a custodial interrogation, the fact that the defendant did not sign the Miranda card does not vitiate his oral waiver. *Commonwealth* v. *Appleby*, 389 Mass. 359, 368 (1983). See *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 54 (1976). For these reasons alone the police misconduct with regard to the April 2 Miranda card does not warrant the suppression of the defendant's statements of that date.

The judge erred in suppressing the defendant's admissions despite finding that the April 2 "Miranda card misadventure" did not prejudice the defendant's rights. The purpose of the exclusionary rule is to deter official misconduct by barring the use of evidence obtained as a result of the illegal action. The rule is predicated on a causal relationship between the acquisition of the evidence and the official transgression. *United States* v. *Crews*, 445 U.S. 463, 470-471 (1980). *Wong Sun* v. *United States*, 371 U.S. 471, 484-485 (1963). The exclusionary rule prevents the introduction of evidence obtained "as a result" of custodial interrogation where the police have not advised the defendant of his rights against self-incrimination and the defendant has not voluntary waived those rights. *Miranda* v. *Arizona*, 384 U.S. 436, 479 (1966).

The decisions of this court are to the same effect. We exclude only that evidence obtained as the "fruit of the constitutional violation." *Commonwealth* v. *Benoit*, 382 Mass. 210, 217 (1981). "Where the nexus between the conduct of the police deemed illegal and the discovery of the challenged evidence is so attenuated as to dissipate the taint, such evidence is admissible." *Commonwealth* v. *Cote*, 386 Mass. 354, 362 (1982), quoting *Commonwealth* v. *Haas*, 373 Mass. 545, 556 (1977). See *Commonwealth* v. *Saia*, 372 Mass. 53, 58 (1977) (evidence sought to be suppressed must be shown to be "an 'exploitation' of the primary illegality").

In this case, the judge found that the police forgery of the defendant's Miranda card resulted in "no prejudice to the defendant." Before the card was presented to the defendant, he had received and orally waived his Miranda rights. The card itself did not assist the police in obtaining the defendant's statements. His admissions were therefore not the "fruit" of the alleged illegality. Without this nexus, the judge was not justified in suppressing the defendant's statements despite the seriousness of the police misconduct. "[W]e believe that a trial court judge is required to consider not only the degree of misconduct, but also the closeness of the link between that misconduct and the eventual testimony sought to be suppressed. If the connection is sufficiently attenuated, the testimony must be admitted." *Commonwealth* v. *Caso*, 377 Mass. 236, 241-242 (1979).

The judge was clearly correct in suppressing the Miranda card, based upon his subsidiary finding that the defendant did not sign the card. We express no opinion as to the admissibility of the card at trial for any purpose if offered by the defendant. Cf. *Commonwealth* v. *Harris*, 364 Mass. 236 (1973) (statements elicited by police in violation of Miranda safeguards are admissible for impeachment purposes); *Harris* v. *New York*, 401 U.S. 222 (1971) (same).

3. *The Motion to Dismiss the Indictment.*

The defendant, relying upon *Commonwealth* v. *Manning*, 373 Mass. 438 (1977), contends that the judge erred in failing to dismiss the indictment for prosecutorial misconduct. We

disagree. The facts in this case establish neither the same level
of egregious misconduct nor the prejudice to the defendant's
rights which combined to require dismissal of the indictment
in *Manning*.

Contrary to the defendant's contentions, *Manning* did not
establish a per se rule mandating the dismissal of indictments
where government agents have intentionally violated a defend-
ant's rights. *Id.* at 444. In *Manning*, we confronted misconduct
by Federal agents amounting to "a deliberate and intentional
attack . . . on the relationship between Manning and his counsel
in a calculated attempt to coerce the defendant into abandoning
his defense." *Id.* at 443. We ordered the exceptional remedy
of dismissal because the defendant "had in fact been prejudiced
to some extent" by the impairment of his right to the assistance
of counsel and "the officers' misconduct was so pervasive as
to preclude any confident assumption that proceedings at a
new trial could be free of the taint." *Id.* at 443-444. The police
misconduct in this case, while deliberate and deplorable, did
not so violate the defendant's constitutional rights as to call
into question his ability to obtain a fair trial. The judge did
not find that the "Miranda card misadventure" cast such doubt
on the credibility of the offending officers as to poison the
entire investigation and subsequent indictment. Cf. *Common-
wealth* v. *Manning, supra* at 444 ("[t]he indictment itself is
so inextricably interwoven with the misconduct which preceded
it that the only appropriate remedy . . . is to dismiss"); *Com-
monwealth* v. *Salman*, 387 Mass. 160, 166-167 (1982) (know-
ing use of false testimony by police to obtain indictment is
ground for dismissal). In fact, the judge specifically found that
the defendant's rights had not been prejudiced, and the judge
accepted as true the police testimony as to the admissions of
the defendant. Suppressing the evidence of the April 2 Miranda
card sufficiently purged the proceedings of the taint of the
illegally obtained evidence. As a result, "[w]e are left with a
record which fails to show that the behavior of the police
strengthened the prosecution's case against the defendant, or
weakened his position." *Commonwealth* v. *Carlson*, 17 Mass.
App. Ct. 52, 59-60 (1983). See *Commonwealth* v. *Sherman*,

389 Mass. 287, 295 (1983) (failure of police to inform defend-
ant of attorney's request to be present at interrogation fell short
of conduct condemned in *Manning*).

Our post-*Manning* decisions underscore the exceptional cir-
cumstances in which dismissal of an indictment is the proper
prophylactic remedy for prosecutorial misconduct. In *Common-
wealth* v. *Cinelli,* 389 Mass. 197, 209-211 (1983), we held
that, although police officers acted improperly by conducting
a postarraignment interview without defense counsel, dismissal
was not warranted in the absence of prejudice to the defendant.
Summarizing the guiding principles of *Manning,* we stated
that, "[a]bsent egregious misconduct or at least a serious threat
of prejudice, the remedy of dismissal infringes too severely
on the public interest in bringing guilty persons to justice."
*Commonwealth* v. *Cinelli, supra* at 210.

In *Commonwealth* v. *Lam Hue To,* 391 Mass. 301 (1984),
we reviewed an order by a Superior Court judge dismissing a
murder indictment due to the Commonwealth's late disclosure
of exculpatory evidence. We noted that whether an indictment
should be dismissed "turns primarily on the ability of the de-
fendant to obtain a fair trial after, and in light of, the impro-
priety." *Id.* at 312-313. To determine whether this criterion
was satisfied we remanded the case to the trial court for findings
as to whether the late disclosure "so prejudiced the defendant
that he will be unable to obtain a fair trial in any subsequent
proceeding." *Id.* at 312. See *Commonwealth* v. *Jackson,* 391
Mass. 749, 754-755 (1984) (pretrial publicity did not require
dismissal where defendant's rights to fair trial were not im-
paired).

We conclude that, in light of the suppression of the Miranda
card, the misconduct alleged in this case has neither caused
prejudice to the defendant nor impaired his ability to receive
a fair trial. Therefore, we agree with the motion judge that
dismissal of the indictment is unwarranted.[4]

---

[4] As an alternative to dismissal of the indictment, the defendant urges us
to bar the offending police officers from testifying at trial. The defendant
argues that by allowing their testimony we force him to disclose the sup-
pressed statements in order to impeach their credibility effectively. However,

Basic to our conclusions in this and similar cases is that our
courts should not adopt prophylactic remedies for police mis-
conduct which needlessly frustrate law enforcement and the
public interests in that sphere. Our emphasis has always been
that any remedy should be tailored to cure the prejudice to the
defendant. That such remedies may not be adequate to deter
official misconduct is well stated by the motion judge. In
obvious appreciation that he was entering a punitive order, he
stated that in the enforcement of the criminal law there is an
"absolute requirement that that enforcement be fair and without
the taint which I have been compelled to find here." Because
judicial responses should be limited to truly remedial, and not
punitive, measures, the absolute necessity for integrity in law
enforcement recommends, in appropriate cases, recourse to
civil remedies and departmental police discipline.

We reverse the judge's suppression of the defendant's April
2 statements, affirm his suppression of the defendant's April 2
Miranda card and April 5 statements, and affirm his denial of
the defendant's motion to dismiss the indictment.

*So ordered.*

since we have ruled that the April 2 statements are admissible, this objection
lacks a foundation.