COMMONWEALTH vs. LAURENCE E. FONTAINE.

Worcester. February 1, 1988. — June 8, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Practice, Criminal,* Dismissal, Assistance of counsel, Conduct of government agents. *Constitutional Law,* Conduct of government agents, Assistance of counsel.

A police officer's failure to inform an attorney that audio-visual equipment was monitoring a cellblock area during an interview between the attorney and his client or to discontinue the audio recording, although the officer was aware that the equipment operated continuously, when considered together with circumstances indicating that the equipment had been in place for some time, yet no guidelines to protect defendants' rights were instituted, and that a second police officer, after being made aware of the constitutional problems involved and testifying at a suppression hearing in the case, viewed the videotape of the interview in its entirety, warranted dismissal with prejudice of complaints charging the client with possession of marihuana and hashish with intent to sell and distribute those substances, where certain recorded revelations by the client to his attorney made the prosecution privy to a probable defense strategy and could affect the Commonwealth's posture in plea negotiations and where the Commonwealth's misconduct in violation of the client's constitutional guarantees was so pervasive as to preclude any confident assumption that proceedings at a new trial would be free of the taint. [496-497] O'CONNOR, J., dissenting.

Circumstances attending the monitoring of a conversation between an attorney and his client, by audio-visual equipment maintained by police officers in the cellblock of a police station, did not warrant dismissal of complaints charging the client with illegal possession of certain drugs and of fireworks, where the Commonwealth was able to meet its burden of showing that the client would suffer no irremediable prejudice due to the misconduct of the police. [497-498]

This court declined, in the circumstances of a criminal case, to adopt a per se rule mandating dismissal of complaints where government agents intentionally violated the attorney-client relationship and the right to a fair trial. [498]

COMPLAINTS received and sworn to in the Clinton Division of the District Court Department on September 11, 1986.

On transfer to the jury session of the Fitchburg Division, a motion to dismiss was heard by *Thomas F. Sullivan, Jr., J.*

The Supreme Judicial court on its own initiative transferred the case from the Appeals Court.

*Claudia R. Sullivan,* Assistant District Attorney, for the Commonwealth.

*Richard J. White* for the defendant.

LIACOS, J. The Commonwealth appealed from an order granting dismissal of complaints against the defendant due to interference with the defendant's right to counsel under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.[1] We transferred the appeal to this court on our own motion. We summarize the motion judge's findings of fact.

On September 9, 1986, at approximately 5:15 P.M., officers of the Lancaster police department executed a search warrant for the defendant's home, arrested the defendant, and brought him to the police station. He was booked and incarcerated in a holding cell.[2] The defendant's mother promptly retained Attorney Richard J. White to represent her son. Mr. White proceeded immediately to the police station. On arrival, Mr. White identified himself to the booking officer, Stanley Roberts, as the defendant's attorney, and asked to meet with his client. The booking officer was alone in the station. He required Mr. White to conduct the interview in the defendant's cell. No other prisoners, officers, or employees were in the cellblock area.

---

[1] The complaints charged the defendant with illegal possession of a Class D substance, marihuana; possession of a Class D substance, marihuana, with intent to manufacture, distribute, dispense, or cultivate it; knowingly and intentionally manufacturing, distributing, dispensing, or cultivating a Class D substance, marihuana; illegal possession of a Class C substance, hashish; possession of a Class C substance, hashish, with the intent to manufacture, distribute, or dispense it; and illegal possession of fireworks.

The validity of the search yielding the illicit items is not before the court.

[2] Officers continued searching the house until approximately 7:30 P.M.

Unbeknownst to Mr. White, audio-visual equipment covered the cellblock area.[3] The booking officer, although aware that the audiovisual system operated continuously, did not inform Mr. White of its existence.[4] The judge found specifically that Roberts "could have easily turned off the microphones so he would not hear or record the conversation between Attorney White and his client . . . [but] did not set the system so the conversation would not be monitored and recorded."

The ensuing cellblock interview reached the merits of the charges. The defendant admitted to Mr. White that in the

---

[3] The judge made the following specific findings regarding the audio-visual system:

"A camera and microphone are located high up on a wall facing each cell with another camera and microphone in the booking area facing the booking desk. The booking officer can monitor the cells visually by viewing a small TV set located on the booking desk. The booking officer can set the system so it will [continuously] move from cell to cell or he can set the system so he will view only one cell. Each camera will make a VCR tape of certain defined areas if it is activated even if the area is not being monitored by an officer at that time.

"The voices and sounds in each area are picked up by the microphones and may be monitored at the booking desk. Once activated, the microphones in each area will continuously record.

"The equipment in use allows the booking officer to set the system so that he can view an area but not hear or record any voice or sounds. The system may also be set so one cell will not be viewed or recorded. . . .

"There are no guidelines, directions, or standard operating procedures issued by the Commonwealth, the Town of Lancaster, or the Lancaster Police Department which govern the filming or recording of conversations between attorneys and their clients in police station cell blocks or holding areas."

[4] The Commonwealth challenges, as unsupported by the evidence, the following findings: "Officer Roberts was monitoring defendant's movements and voice when Attorney White arrived." The Commonwealth further challenges the judge's findings regarding Robert's actions after showing Mr. White to the cellblock: "[Roberts] saw that the conversation between Mr. White and his client was being monitored and recorded and that a tape was being made concerning the movements of Mr. White and his client. The officer sat back down at his desk and saw the movements and heard the voices of Attorney White and his client."

We do not rely on this portion of the judge's findings for our decision and thus do not consider whether these findings are clearly erroneous. See *Commonwealth* v. *Hine,* 393 Mass. 564, 568 (1984).

defendant's home were marihuana plants, hashish, marihuana, as well as a bag of money. He insisted that the money in the bag belonged to someone else. At some point, Mr. White became aware that the conversation might be monitored, mentioned this to his client, and suspended the interview in order to speak with Roberts about the problem. Mr. White also stated his objections about the recording to the chief of police, Eric McAvene, on McAvene's return from the search of the defendant's home. McAvene refused to turn over the videotape to Mr. White. He did, however, lock the tape in the police safe with assurances that neither he nor anyone else would view or listen to the tape.

McAvene did not, in fact, view the tape outside the presence of the defendant's counsel. However, Sergeant Kevin Lamb of the police department, after testifying at a motion to suppress hearing on this case on November 20, 1986, became aware of the tape's existence. After leaving the court, he returned to the police station and viewed the videotape in its entirety.[5]

The judge concluded that the Commonwealth failed to sustain its burden of proving that the police misconduct posed no threat of prejudice to the defendant. To the contrary, the judge found several ways in which the defendant would be prejudiced. First, the recording could be used for impeachment purposes, as a prior inconsistent statement, should the defendant testify at a trial. Second, discussions or settlement negotiations might be tainted.[6] Third, later civil forfeiture proceedings regarding

---

[5] Lamb had taken the lead in investigating the defendant. It was Lamb who signed the affidavit in support of a search warrant, conducted the search of the defendant's house, and signed the return on the warrant.

At the November 20 proceedings, the court had discovered that, due to McAvene's unavailability, the defendant's motion to dismiss would be continued. The judge emphasized in his findings that "defense counsel had agreed to continue this motion because the Chief secured the tape in his safe and had agreed that [the tape] would not be viewed except for purposes of this motion and with defense counsel's consent. *Sgt. Lamb was present at court, heard this conversation, returned to the station, and viewed the tape . . . . Sgt. Lamb is a material witness on this case*" (emphasis supplied).

[6] As the Commonwealth points out, the judge stated incorrectly at this point that the defendant had admitted to ownership of the bag containing a large cash sum. We accept the judge's earlier finding that, in fact, the

the money might be affected. Finally, Lamb's private viewing of the tape would taint any future testimony on his part.[7] The judge further concluded, based on his subsidiary findings, that "we are faced with egregious misconduct which occurred at the police station on the night of the arrest and on the day of the hearing on the motion to suppress [November 20]. Sgt. Lamb's viewing of the tape, after listening to a conversation between the court and counsel, is not only an affront to this court but also flagrant misconduct which evinces a total disrespect and disregard for the confidentiality of the attorney, client relationship."

1. *Standard of review.* "Absent egregious misconduct or at least a serious threat of prejudice, the remedy of dismissal infringes too severely on the public interest in bringing guilty persons to justice." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983). Accord *Commonwealth* v. *Cronk,* 396 Mass. 194, 199 (1985). See *Commonwealth* v. *King,* 400 Mass. 283, 290 (1987). The Commonwealth agrees that, under the circumstances of this case, it bears the burden of proving that no prejudice to the defendant resulted from the viewing of the videotape. There must be a showing that, for any future proceedings, the improper police conduct neither improves the Commonwealth's case nor prevents adequate protection of the defendant's position. See *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 312-313 (1984) (where prosecution acts improperly, issue of dismissal turns primarily on defendant's ability to obtain fair trial in light of the impropriety). See also *Commonwealth* v. *King, supra.* "A trial judge, therefore, must rest a dismissal of criminal charges for failure of the prosecution to comply with [constitutional mandates] . . . on findings that the [misconduct] was due to deliberate and egregious action . . . or unintentional conduct

---

defendant denied ownership of the money bag. This conclusion finds clear support in the stipulated transcript of the conversation between the defendant and his attorney.

[7] At oral argument, the Commonwealth stated that it would be willing to proceed with this case under an order barring completely Lamb's testimony.

resulting in irremediable harm to the defendant." *Commonwealth* v. *Cronk, supra,* and cases cited.

Absent clear error, we accept the judge's subsidiary findings of fact. *Id.* Accord *Commonwealth* v. *Hine,* 393 Mass. 564, 568 (1984), and cases cited. "A trial judge's discretion to find prejudice is much broader than ours." *Commonwealth* v. *Lam Hue To, supra* at 309, quoting *Commonwealth* v. *Baldwin,* 385 Mass. 165, 177 (1982). Within this context, however, "where the ultimate findings and rulings bear on issues of constitutional dimension, they are open for review." *Commonwealth* v. *Haas,* 373 Mass. 545, 550 (1977). Accord *Commonwealth* v. *Murphy,* 362 Mass. 542, 551 (1972) (Hennessey, J., concurring).

2. *Possible prejudicial effect.* The monitoring of privileged communications between a defendant and his attorney touches the core of the right to counsel. The audio-visual system had been in place since 1985, yet no guidelines to protect defendants' rights were instituted.[8] Roberts, who knew of the system's existence, neither alerted the defendant's attorney nor turned off the audio recording. We find particularly intolerable Lamb's conduct in listening to the videotape after being made aware of the constitutional problems involved in this case. That viewing was, indeed, an affront to both the Constitution and the court.

In this context, we consider the possible prejudice to the defendant. Regarding the charges for possession of marihuana and hashish with intent to distribute, we conclude that the judge had ample facts on which to find prejudice to the defendant. Revelation of the defendant's assertion that the money did not belong to him made the prosecution privy to a probable defense strategy.[9] The defendant asserts, and the Common-

---

[8] We take this opportunity to note that, where audio-visual equipment is installed to monitor jail cells for suicide prevention purposes, G. L. c. 40, § 36B (1986 ed.), guidelines governing its use are advisable to ensure protection of defendants' constitutional rights.

[9] In this case, a member of the prosecutorial team intentionally violated privileged attorney-client conversations. See *Commonwealth* v. *King, supra* at 287 ("none of the team prosecuting [the defendant] was involved in, or

wealth has not denied, that no direct evidence linked the defendant to the sale or distribution of drugs. Rather, the defendant claims that the relatively large amount of money found in the bag, taken in conjunction with the marginal amount of drugs found in the defendant's home, would create the appearance of drug dealing. Advance knowledge of the defendant's position that the money belonged to another would give the prosecution an improper advantage in anticipating defense trial strategy and in preparing for cross-examination of the defendant, should he choose to testify. See *Commonwealth* v. *King, supra* at 288. Furthermore, the prosecution's knowledge of a possible third-party offender could toughen the Commonwealth's bargaining posture and strengthen unfairly its case regarding charges carrying substantial penalties. See *Commonwealth* v. *Carlson,* 17 Mass. App. Ct. 52, 55-56 (1983).

This is not a case where prosecutorial misconduct is remediable through disclosure of exculpatory evidence which a defendant may then use at a new trial. See *Commonwealth* v. *Lam Hue To, supra* at 308-309. Here, the Commonwealth's violation of constitutional guarantees yielded information to which it was not entitled. This knowledge is not retractable. The judge's dismissal of the complaints charging the sale and distribution of drugs was proper and necessary because the "misconduct was so pervasive as to preclude any confident assumption that proceedings at a new trial would be free of the taint." *Commonwealth* v. *Lam Hue To, supra* at 313, quoting *Commonwealth* v. *Manning,* 373 Mass. 438, 444 (1977).

Our conclusion differs, however, regarding the complaints charging illegal possession of certain drugs and of fireworks. Here, the Commonwealth has met its burden of showing no irremediable prejudice to the defendant. Assuming that the search of the defendant's home was valid, we can anticipate

---

knew about, the improper surveillance"). Police officers who are involved with the indictment and prosecution of a defendant on charges giving rise to questions of improper government conduct are part of the prosecutorial team. Their actions are attributed to the prosecution. *Commonwealth* v. *Lam Hue To, supra* at 311. *Commonwealth* v. *Redding,* 382 Mass. 154, 157 (1980). *Commonwealth* v. *Manning,* 373 Mass. 438, 442 n.5 (1977).

no defense strategy that the recorded conversation would be likely to affect. An order barring the testimony of Lamb and McAvene (except as provided in note 10, *infra*) can remedy the effect of the tainted knowledge on their part. Obviously, any use of the videotape or of its fruits must also be suppressed. The matter of plea bargaining leverage is a closer issue. However, the Commonwealth's case on possession is strong, and the contents of the videotape do not enhance it substantively. At least on these lesser charges, the judge's careful attention to the parties' interactions confers sufficient protection.

3. *Dismissal for egregious misconduct.* This court has declined to adopt a per se rule mandating dismissal of complaints in cases in which government agents intentionally violate the attorney-client relationship and the right to a fair trial. *Commonwealth* v. *King, supra* at 291. *Commonwealth* v. *Cinelli, supra* at 208. *Commonwealth* v. *Manning, supra.* See *United States* v. *Morrison,* 449 U.S. 361, 364-365 (1981) (Federal rule is not to dismiss indictment for egregious prosecutorial misconduct absent prejudice or substantial threat thereof). Cf. *Commonwealth* v. *Light,* 394 Mass. 112, 116 (1985) (Liacos, J., dissenting); *Commonwealth* v. *King, supra* at 292 (Abrams and Liacos, JJ., dissenting). While we are concerned that a key member of the prosecutorial team intentionally violated the attorney-client relationship, the prejudicial effect to the defendant regarding the possession charges is remediable. In this light, the circumstances of this case do not give rise to the level of egregious conduct that might necessitate complete dismissal. See *Commonwealth* v. *Cinelli,* 389 Mass. 197, 207-211 (1983); *Commonwealth* v. *Manning, supra* at 442-445.

The dismissal of the complaints charging intent to sell and distribute marihuana and hashish is affirmed. The dismissal of the remaining complaints is reversed. The case is remanded for trial on the latter charges, with orders to be entered suppressing use of the videotape and the fruits thereof, and, further, suppressing the testimony of Lamb and McAvene.[10]

*So ordered.*

---

[10] The testimony of Lamb and McAvene as to the conduct of the search and the items seized as a result, however, may be allowed if otherwise admissible.

O'CONNOR, J. (dissenting in part). I dissent from the court's disposition of the possession with intent to distribute charges. There is neither prejudice nor substantial threat of prejudice to the defendant that cannot be remedied by measures short of dismissal. In light of society's "substantial interest in prosecuting those accused of crime and bringing the guilty to justice," *Commonwealth* v. *King,* 400 Mass. 283, 290 (1987), indictments and complaints should not be dismissed unless dismissal is required to cure prejudice or the substantial threat of it. I would reverse the dismissal of all the charges against the defendant.

The court gives two reasons for its conclusion that the judge correctly dismissed the possession with intent to distribute charges. The first of these is that the defendant's statement that the money found in his house belonged to someone else "made the prosecution privy to a probable defense strategy," *ante* at 496, thus granting the prosecution an unfair trial advantage. The second reason is that the statement concerning the ownership of the bag "could toughen the Commonwealth's bargaining posture and strengthen unfairly its case regarding charges carrying substantial penalties," *ante* at 497.

I agree with the court that whether or not the money found in the defendant's house belonged to him would bear significantly on the issue of the defendant's guilt of possession with intent to distribute. However, it does not follow that the defendant's statement to his lawyer that the money was not his, made known to the police, advanced the Commonwealth's case in the slightest degree. The defendant was caught with $31,000 cash and drugs in a bag together with other drugs in his home. Faced with this fact, the defendant at trial could either attempt an explanation, consistent with innocence, of why his $31,000 was in the bag, or he could deny that the $31,000 was his. A prosecutor with less than even minimal experience would surely have anticipated and been ready for both defenses. The interception of the defendant's statement exposed no secret strategy. Practically speaking, it conferred no advantage on the Commonwealth.

The court's expressed concern about possible consequences to the defendant in plea bargaining negotiations is equally unfounded. The prosecution's "knowledge of a possible third party offender" is said to possibly "toughen the Commonwealth's bargaining posture and strengthen unfairly its case . . .," *ante* at 497. The way in which the defendant's exculpatory statement might enable the prosecution to toughen its bargaining posture is neither apparent nor explained by the court. The police found over $31,000 and drugs in the defendant's home. In such circumstances, the possibility of third party involvement was manifest. The defendant's statement divulged no clues not already obvious. It conferred no plea bargaining advantage on the prosecution.

The District Court judge expressed concern about the availability of the recorded statement to assist the prosecutor's impeachment of the defendant should he testify. There is a simple remedy for that perceived problem, and it falls far short of dismissing the complaints. As the court said in *Commonwealth v. Hine,* 393 Mass. 564, 573 (1984), judicial responses should be limited to truly remedial measures. The proper judicial response to the judge's concern is an order prohibiting the prosecution from using the tape to impeach the defendant or for any other purpose.

The judge concluded that Sergeant Lamb's future testimony has been tainted by his private viewing of the tape. An appropriate suppression order, not the dismissal of complaints, is the correct remedy. With the suppression of tainted evidence, the defendant's right "to obtain a fair trial after, and in light of, the impropriety," *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 312-313 (1984), would be assured.

The court does not purport to base its affirmance of the dismissal of the complaints charging possession with intent to distribute on the egregiousness of the police misconduct alone. Instead, the court concludes, contrary to my view, that the police misconduct prejudiced or substantially threatened to prejudice the defendant, and that, therefore, the complaints were properly dismissed. Nevertheless, the court's opinion contains dicta suggesting that egregious prosecutorial miscon-

duct may sometimes necessitate dismissal even in the absence of prejudice. *Ante* at 498. I disagree.

In *Commonwealth* v. *King,* 400 Mass. 283, 292 (1987), the court said, "It may be that, in the absence of prejudice or substantial threat of prejudice, an indictment should never be dismissed." It is my view, consistent with that observation in *King,* that dismissal in the absence of prejudice is never an appropriate remedy. Dismissal in the absence of prejudice ignores the fact that "judicial responses should be limited to truly remedial, and not punitive, measures . . . ." *Commonwealth* v. *Hine, supra* at 573. A dismissal of criminal charges not needed to remedy prejudice cannot properly be termed "remedial." Furthermore, the enhanced deterrence provided by such a rule compared to a rule based on prejudice is minimal, see *Commonwealth* v. *King, supra* at 292 n.4. Most importantly, such minimal deterrence does not justify dismissal of charges when balanced against the strong public interest in prosecuting suspects and punishing the guilty. *Id.* at 290.

The standard under art. 12 of the Declaration of Rights should conform to that enunciated by a unanimous Supreme Court in *United States* v. *Morrison,* 449 U.S. 361, 365 (1981), under the Sixth Amendment: "Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial . . . . More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate . . . ."

There are other remedies for police misconduct that do not "needlessly frustrate law enforcement and the public interests in that sphere," such as civil remedies and internal police discipline. *Commonwealth* v. *Hine, supra* at 573. I respectfully dissent from the court's disposition of the possession with intent to distribute charges.