Cowin, J.
BACKGROUND.
The defendant, Russell Yeager, has been indicted for armed assault with intent to murder and assault and batteiy by means of a dangerous weapon (two counts, one naming Robert Gaynor as the victim and one naming Shana Drake). The defendant now moves to dismiss the indictments for two different reasons: (1) the Commonwealth failed to preserve potentially exculpatory evidence, to wit, a brown leather jacket worn by William Whittemore, and (2) the Commonwealth failed to reveal the telephone number of a witness, one Dr. Peter Weinberg. After hearing argument and receiving affidavits and grand jury transcripts relative to both issues, the Court ordered an evidentiary hearing regarding the failure to preserve the brown leather jacket. Said hearing was held on November 21, 1997. The following witnesses testified at the hearing: Officer Sanchez of the Cambridge Police Department and John Abbott, an expert in the testing of blood.[1]
The following background is drawn from the materials submitted (other than the evidence at the hearing) and is pertinent to both the reasons for dismissal argued by the defendant. On April 19,1997, there was an altercation in Harvard Square, Cambridge near a Store 24. The eyewitnesses differ as to the precise role of the players in the events, although it is clear that Robert Gaynor and Russell Yeager were both involved in the fight. During the fray, at least one knife was used and Gaynor was seriously injured, bleeding profusely from a neck wound. Yeager was also cut and bleeding as a result of the fight. Which man was the victim and which the aggressor is disputed. The Commonwealth contends that Gaynor was attacked by Yeager. Yeager counters that he was set upon by Gaynor and one William Whittemore and that he, *581 Yeager, stabbed Gaynor in self-defense. Also in dispute is whether William Whittemore, who wore a brown leather jacket at the time, played a role in the altercation or was merely a bystander. At the grand jury, Gaynor testified[2] that Whittemore did not participate in the altercation, but that he had been at a pay phone twenty-five to thirty feet from the fight. At the time of the incident, however, several people had pointed Whittemore out to the police as “the man in the brown leather jacket" who was “involved in the altercation.”
Officer Sanchez of the Cambridge Police testified at the grand jury that he recovered a black-handled butterfly knife from Yeager and that said knife had a red substance on it, which substance the officer believed to be blood. The officer also recovered a second knife from the defendant and a nylon knife holder. Yeager was arrested at the scene, and, after being advised of his rights, he admitted to stabbing the defendant, but maintained that he did so in self-defense.
As a result of the stabbing incident, Whittemore, too, was arrested and charged with being a disorderly person. Officer Sanchez seized Whittemore’s brown leather jacket as evidence of Whittemore’s possible involvement in the stabbing. In addition to the disorderly charges against Whittemore, Yeager himself applied for complaints against both Gaynor and Whittemore for assault and battery on Yeager. Both such complaints issued.
On July 29, 1997, the disorderly charge against Whittemore was filed without a change of plea. The assault and battery complaint remained extant however. Following the filing of the disorderly charge, Whittemore requested, and the Commonwealth on August 12, 1997, authorized, the release of the brown leather jacket. At oral argument, the Commonwealth conceded that in hindsight, it would have been preferable not to have returned the jacket.
On September 9, 1997, defense counsel requested that the jacket be made available for examination and testing for the presence of Mr. Yeager’s blood (to support its contention that Yeager was attacked by both Gaynor and Whittemore). At that time, the defense was informed that the jacket had been returned to Whittemore. Through his attorney, Whittemore has refused to produce the jacket.[3]
Based on the testimony presented by Officer Sanchez and John Abbott at the evidentiary hearing, I find the following. The brown leather jacket was kept by the police in a nonrefrigerated state for approximately four months following the incident before it was returned to Whittemore. Exactly what tests and the sophistication of analysis that could be done on the blood depends upon the amount of blood, if any, that was present on the jacket. It is impossible to determine without seeing the jacket what tests could have been performed or still could be performed on any blood that might be on the jacket.
When potentially exculpatory evidence is lost or destroyed, the court must “weigh the culpability of the Commonwealth, the materiality of the evidence, and the potential prejudice to the defendant.” Commonwealth v. Willie, 400 Mass. 427, 432 (1987).
In regard to the culpability of the Commonwealth, the Commonwealth need not prove good faith or earnest efforts to preserve the evidence. Id. The culpability of the Commonwealth, if there is any, is then weighed with the factors of materiality and prejudice to determine whether, and to what extent, any remedy is necessary. Id. at 433. It is clear that the jacket was relevant evidence in this case. There was no evidence before me, however, that the Commonwealth intentionally failed to retain the jacket in a desire to prevent access to exculpatory evidence and the Court declines to so find. Rather, the Commonwealth’s conduct in returning the jacket in the instant case was, at worst, negligent. In addition, once the defendant requested the Commonwealth to produce the jacket, the Commonwealth made efforts to do so, but Whittemore was and is unwilling to produce evidence that could inculpate him.
The issues of materiality and potential prejudice to the defendant should be considered together in this ease. Concerning materiality, “(e]vidence is material if, in considering the entire record, it creates a reasonable doubt as to the defendant’s guilt.” Commonwealth v. Otsuki, 411 Mass. 218, 231 (1991), citing Commonwealth v. Wilson, 381 Mass. 90, 107 (1980). With respect to potential prejudice, the defendant must, at the very least, “establish a ‘reasonable possibility, based on concrete evidence rather than a fertile imagination,’ that access to the [material] would have produced evidence favorable to his cause.” Id. at 433, quoting Commonwealth v. Neal, 392 Mass. 1, 12 (1984).
The defendant claims that if blood were present on Whittemore’s brown leather jacket and if it could be tested and shown to be consistent with Yeager’s blood, such evidence would be exculpatory of Yeager, because it would implicate Whittemore in the attack. Such a finding would cast serious doubt on the credibility of Gaynor who stated that Whittemore was twenty-five to thirty feet away at a pay phone during the fight. The presence of Yeager’s blood on the jacket would also tend to support Yeager’s self-defense claim, as it would indicate that he was being attacked by two men.[4] Thus, the evidence is clearly material and its loss (from the return of the jacket to Whittemore) potentially prejudicial to Yeager.
The Commonwealth maintains that the leather jacket is not material as the defendant in his original statement to the police claimed he was attacked by one man and that he defended himself against this one man. Thus, the fact that there may have been someone else involved, when the defendant was not aware of him, can have “no bearing” on his self-defense claim. *582 However, the defendant is not locked in to the original statement he made to the police and is entitled to change the context of his defense.
Weighing the culpability of the Commonwealth, the materiality of the evidence and the potential prejudice to the defendant from the loss of the brown leather jacket, a sanction is required in this case. However, dismissal is not the only remedy. “[DJismissal of a criminal case is a remedy of last resort because it precludes a public trial and terminates criminal proceedings.” Commonwealth v. Cronk, 396 Mass. 194, 198 (1985). Indeed, in situations other than those in which the Commonwealth deliberately and intentionally undermines defendant’s constitutional rights or where the prejudicial effect of the misconduct constitutes irremediable harm, sanctions other than dismissal should be devised. Id at 199.
The case of Commonwealth v. Cameron, 25 Mass.App.Ct. 538 (1988) is instructive in regard to the sanction to be applied in this case. In Cameron, an operating-under-the-influence case, a videotape of defendant’s booking was lost or destroyed. The Court found that the Commonwealth was culpable due to negligence or inadvertence; that the tape would have been material to defendant’s case and that its loss was substantially prejudicial to her. The Court concluded that dismissal of the operating under the influence charge was not warranted and that the appropriate remedy was to permit the defendant to question about and comment upon the Commonwealth’s failure to produce the tape. The Court also precluded the Commonwealth from introducing evidence that the defendant’s tape was blank or that there was a malfunction or defect in the camera.
Guided by the Court’s reasoning and approach in Cameron, this Court concludes that the appropriate sanction is to permit the defendant to inquire about and comment upon the Commonwealth’s failure to preserve the leather jacket. The Commonwealth may not assert that the jacket could have been retrieved (as ■Whittemore validly refuses to return it) and the Commonwealth may not claim that the defendant was lax in requesting its production (the evidentiary value of the jacket should have been obvious to the government).
The defendant’s second basis for seeking dismissal of the indictments is that the Commonwealth failed to reveal the telephone number of a witness, Dr. Peter Weinberg. The defendant claims that this witness was present at the scene; has testimony that would be helpful to the defense version of the events and that the Commonwealth suppressed the telephone number of this witness.
The following facts relevant to Dr. Peter Weinberg appear from the record in this case and the materials submitted. One Dr. Jonathan Taylor was a witness to the altercation. The Commonwealth possessed the name, address and telephone number of Dr. Taylor at all relevant times. Dr. Peter Weinberg was also a witness to the fray. Dr. Weinberg’s account of the events supports the defense theory, i.e., Dr. Weinberg states that it was his “distinct impression” that Gaynor was attacking Yeager. The Commonwealth learned about Dr. Weinberg from Dr. Taylor, who, in April 1997, provided the Commonwealth with Dr. Weinberg’s telephone number. Both Dr. Taylor and Dr. Weinberg live in New York and it appears that Dr. Weinberg has moved at least once since April 1997.
In June 1997, in the grand juiy testimony, Dr. Weinberg was mentioned by Dr. Taylor as a witness. (However, the substance of Dr. Weinberg’s testimony was not provided to the grand jury.) This grand jury transcript was provided to the defendant on July 21, 1997. On August 7, 1997, the Commonwealth agreed to provide the defendant with the names and addresses of all eyewitnesses.[5] Pursuant to this agreement, on August 22, 1997, the Commonwealth did provide the defendant with the name, address and telephone number of Dr. Jonathan Taylor. Further, the Commonwealth informed defendant on August 22, 1997 that Dr. Weinberg was a witness, but stated that his address was unknown. The Commonwealth did not notify the defendant of the phone number of Dr. Weinberg, despite the fact that it was aware of said phone number. (It will be recalled that the Commonwealth had agreed to provide defendant only with names and addresses, not phone numbers, of witnesses.) Ultimately, the defendant learned that the government was in possession of the phone number of Dr. Weinberg and was ordered by the Court to provide defendant with said number.
Once Dr. Weinberg was contacted by the defense, Dr. Weinberg provided an affidavit detailing his observations of the altercation. Dr. Weinberg indicates in his affidavit that his memory of the events now (November 1997) is not as good as it was in late April 1997. It is the defendant’s position that the observations of Dr. Weinberg support the defense theory of the events and that now Dr. Weinberg’s memory is not as strong as it was when the Commonwealth should have provided his address to the defendant.
Applying the Willie legal analysis to the facts regarding Dr. Weinberg, the Commonwealth’s behavior is anything but exemplary. If the Commonwealth did not have Dr. Weinberg’s address but did have his telephone number, it should have provided same to the defendant or used the telephone number to ascertain Dr. Weinberg’s address.[6] However, the withholding of the location of Dr. Weinberg has not been shown to have been intentional.
Assuming the Commonwealth’s conduct was negligent, there is no showing before me that any material evidence has been lost to the prejudice of the defendant. Although Dr. Weinberg’s affidavit states that his memory of the April incidents is not as good in November 1997 as it was several months ago, his statement *583 in the affidavit of his memory of the events is very detailed. There is no indication of any way in which his memory would have provided more beneficial information to the defendant at an earlier time. It is clear from the affidavit that he is still capable of providing essentially the same helpful testimony to the defense now as he could have provided earlier.
Moreover, the Commonwealth did not agree to provide the names and addresses of witnesses until August 7, 1997 and did not provide same until August 22,1997. (Indeed, the request for said information was not made until the very end of July.) And Dr. Weinberg’s affidavit only states that his memory is not as clear now as it was in April 1997, not that it is not as clear as it was in August 1997. In any event, the defendant is now (prior to trial) in possession of the necessary material. Thus, there is no showing that any material evidence, potentially helpful to the defendant has been lost. Accordingly, under the test of Commonwealth v. Willie supra, there has been no showing that the defendant has been prejudiced by the loss of evidence in this regard. See Commonwealth v. Gabbidon, 17 Mass.App.Ct. 525, 535-36 (1984).[7] If a defendant learns of previously undisclosed evidence in time to permit full opportunity to utilize such evidence, “the prosecution’s misdeeds, however inexcusable, do not warrant remedial action.” Commonwealth v. Lam Hue To, 391 Mass. 301, 309, quoting Commonwealth v. Ellison, 376 Mass. 1, 25 (1978).
ORDER
For the foregoing reasons, the defendant’s motion to dismiss is DENIED except that the defendant may inquire about and comment upon the Commonwealth’s failure to preserve the leather jacket. The Commonwealth may not assert that the jacket could have been retrieved and the Commonwealth may not claim that the defendant was lax in requesting its production.

 Another witness also testified for the defendant, but, before that witness concluded testifying, the defendant, without opposition, withdrew that witness’ testimony.

 Sometime following the presentation of evidence to the grand jury (June 1997), the Commonwealth lost contact with Mr. Gaynor and has stated that it does not anticipate producing him for trial. The Commonwealth plans to try Yeager based upon the testimony of eyewitnesses.

 Whittemore cannot be ordered to produce the jacket, despite the fact it is physical evidence, as such evidence may tend to incriminate him. See Commonwealth v. Hughes, 380 Mass. 583 (1980).

 There is also eyewitness testimony that tends to corroborate this version of the events.

 Although the defendant requested that the Commonwealth provide telephone numbers of witnesses, the Commonwealth did not agree, and was not ordered, to do so.

 The Commonwealth argues that the defendant did have the name, address and telephone number of Dr. Taylor and it was Dr. Taylor who provided the Commonwealth with the telephone number of Dr. Weinberg. The Commonwealth maintains, therefore, that the defendant could have obtained the phone number of Dr. Weinberg from Dr. Taylor. However, there is nothing before me that indicates that the defendant should have been aware that it could obtain Dr. Weinberg’s whereabouts from Dr. Taylor. Further, it was the Commonwealth’s duty to provide this information to the defendant.

 If the Commonwealth were aware of the substance of Dr. Weinberg’s testimony as it is outlined in Dr. Weinberg’s affidavit, the Commonwealth had a duty to provide that testimony to the defendant as it was clearly material, exculpatory evidence. See Brady v. Maryland, 373 U.S. 83 (1963). However, this Court is uncertain of the details that were provided to the Commonwealth by Dr. Weinberg in the April 25, 1997 telephone conversation between Dr. Weinberg and the assistant district attorney. Regardless, the outcome of this motion is not affected, as the defendant is now aware of that testimony.