## COMMONWEALTH vs. ELLEN FRITH & another.[1]

Suffolk. September 13, 2010. - December 9, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.[2]

*Rules of Criminal Procedure. Practice, Criminal,* Disclosure of evidence, Discovery, Judicial discretion.

Discussion of Mass. R. Crim. P. 14, which imposes, inter alia, pretrial discovery obligations on the Commonwealth in criminal cases. [439-440]

A District Court judge abused his discretion when he imposed a $5,000 sanction on the Commonwealth for failing to comply with its pretrial discovery obligations under Mass. R. Crim. P. 14 (a) (3) (specifically, by failing to inquire of police as to the existence of discoverable material and then making a false representation on a "certificate of compliance" regarding the satisfaction of its pretrial discovery obligations), where there was no evidence in the record to support the judge's finding that the representation in the certificate was made in bad faith; where the purpose of the sanction was punitive and therefore not contemplated under rule 14, which is remedial in nature; where the Commonwealth's failure to comply with discovery procedures did not result in any harm to the defendant that deprived her of the right to a fair trial; and where the behavior of defense counsel with respect to the unproduced discovery was far short of exemplary and tended to mislead the judge. [440-445]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 27, 2009.

The case was reported by *Cordy,* J.

*Bethany Stevens,* Assistant District Attorney, for the Commonwealth.

*Daniel Beck* for Ellen Frith.

SPINA, J. In the present case, here on a reservation and report by a single justice of this court, we consider whether a judge in the Cambridge Division of the District Court Department (District Court) abused his discretion when he imposed a $5,000

---

[1]Cambridge Division of the District Court Department, as a nominal party.

[2]Chief Justice Marshall participated in the deliberation on this case prior to her retirement.

sanction on the Commonwealth for violating Mass. R. Crim. P. 14 (a) (3), as appearing in 442 Mass. 1518 (2004), by failing to inquire of police as to the existence of discoverable material and then making a false representation on a "certificate of compliance" regarding the satisfaction of its pretrial discovery obligations. For the reasons that follow, we conclude that imposing a $5,000 sanction did constitute an abuse of the judge's discretion, and as such, we remand the case to the county court for entry of a judgment vacating the District Court's order.

1. *Background.* During the evening of October 19, 2007, a dispute arose on Quincy Street in Cambridge when the defendant, Ellen Frith, vociferously complained to Sheila McHugh Puopolo and her husband that their motor vehicle was blocking handicapped access to a bus stop. The following day, the defendant went to the Cambridge police department and reported that she had been assaulted by Puopolo. The report was taken by Officer Joseph M. Kelley and labeled "Incident Report #7008876." Two days later, on October 21, Detective John Crowley spoke with Puopolo over the telephone about the dispute, after which he documented their conversation in a report dated October 31, 2007, and labeled "Incident Supplement #7008876-1." As a result of the defendant's report, Detective Crowley filed an application for a criminal complaint, alleging that Puopolo had committed assault and battery by means of a dangerous weapon (an umbrella) and assault and battery on the defendant.

In the meantime, on October 26, 2007, Puopolo went to the Cambridge police department and reported that she had been assaulted by the defendant on October 19. The report was taken by Officer Alexander Colovos and labeled "Incident Report #7009093." As a result of this report, Detective Kenneth Mui filed an application for a criminal complaint, alleging that the defendant had committed assault and battery by means of a dangerous weapon (a shod foot) and assault and battery on Puopolo.

Following a single hearing on the two applications, a criminal complaint issued only against the defendant. A pretrial conference was held on January 15, 2008, at which time a Middlesex County assistant district attorney (ADA), who was not the appellate ADA, filed the Commonwealth's notice of discovery

stating that the Commonwealth had provided defense counsel with the following discovery materials: the application for a criminal complaint; Incident Report #7009093, which included a reference in the one-paragraph "Narrative" portion of the report to the fact that the defendant "filed a past assault report #7008876 on 10/20/07"; a notarized statement from Puopolo; a notarized statement from Puopolo's husband (who had witnessed the incident); an information sheet on the defendant; and electronic messages between Harvard University Security Officer Hieu Pham (who had witnessed the incident) and several other security officers. The ADA also filed the Commonwealth's "certificate of compliance," pursuant to rule 14 (a) (3), which stated that "the Commonwealth, to the best of its knowledge and after reasonable inquiry, has disclosed and made available all items subject to discovery at this time, under Mass. R. Crim. P. 14 (a) (1) (A)."[3]

On February 12, 2008, a pretrial hearing was held at which the ADA and defense counsel signed a pretrial conference report stating that automatic discovery for the defense had been completed. A trial date was set for April 9, 2008. Later in the afternoon of February 12, defense counsel, in the absence of the ADA, asked that the case be recalled, informed the District Court judge that the birth dates of Puopolo's husband and Officer Hieu Pham were not included in the discovery materials, and requested that sanctions be imposed against the Commonwealth. The judge declined to act on this oral request for sanctions and gave the Commonwealth two weeks to provide the birth dates to defense counsel. The Commonwealth immediately filed a supplemental notice of discovery setting forth the requested information.[4]

---

[3]It appears from the record that the Commonwealth never provided the defendant with a copy of Incident Report #7008876. However, at some point after October 31, 2007, the defendant obtained a copy of Incident Supplement #7008876-1, which she then gave to her attorney no later than January 15, 2008. According to defense counsel, his client procured this report by appearing at a Cambridge police station and requesting it.

[4]Both the prosecution and the defense have a continuing duty of disclosure with respect to items and information properly subject to discovery. Rule 14 (a) (4) of the Massachusetts Rules of Criminal Procedure, as appearing in 442 Mass. 1518 (2004), states: "If either the defense or the prosecution subsequently learns of additional material which it would have been under a duty to disclose or produce pursuant to any provisions of this rule at the time of a previous discovery order, it shall promptly notify the other party of its acquisi-

On March 7, 2008, the defendant filed a written motion for sanctions, alleging, among other things, that the Commonwealth had committed prosecutorial misconduct when the ADA falsely claimed that he had completed his discovery obligations even though, according to the defendant, he had not. More particularly, the defendant asserted that the ADA had filed the certificate of compliance and had signed the pretrial conference report without disclosing the birth dates of two potential Commonwealth witnesses. A nonevidentiary hearing was held before a different District Court judge on April 14, 2008, at which defense counsel argued for the first time that, in addition to the absence of two birth dates from the discovery materials, the Commonwealth did not provide a copy of Incident Supplement #7008876-1, which contained statements from Puopolo regarding the October 19 dispute.[5] The ADA stated that he was unaware of this supplementary report, and he acknowledged that he had made a mistake in neglecting to contact the police to see if there were any further reports involving the defendant, but he told the judge that his purported inaction had not been knowing or intentional. The judge denied the defendant's motion for sanctions, concluding that the Commonwealth's failure to provide the birth dates was inadvertent and that the Commonwealth had supplied the missing information as soon as it was alerted to the deficiency. The judge declined to consider the matter of the unproduced police report because it had not been raised in the defendant's written motion.

The defendant filed a second motion for sanctions on May 14, 2008, alleging that the Commonwealth had committed prosecutorial misconduct when the ADA failed to conduct a "reasonable inquiry" as to the existence of Incident Supplement #7008876-1, as required by rule 14 (a) (3), and then falsely represented to the court in the certificate of compliance that he

---

tion of such additional material and shall disclose the material in the same manner as required for initial discovery under this rule." See *Commonwealth v. Daniels*, 445 Mass. 392, 401-404 (2005) (Commonwealth has continuing duty to review specific discovery requests and disclose favorable or exculpatory evidence where appropriate). This duty continues throughout trial. See *Commonwealth v. Costello*, 392 Mass. 393, 397-400 (1984).

[5]In the defendant's view, Incident Supplement #7008876-1 was exculpatory evidence because it showed that Puopolo had made inconsistent statements about the dispute on October 19, and that Detective Crowley did not appear to believe her version of events.

had made such inquiry. A nonevidentiary hearing was held on May 28, 2008, before a third District Court judge. On July 2, 2008, this judge allowed the defendant's motion and imposed a sanction of $5,000 on the Commonwealth for its violation of rule 14. In his written memorandum of decision and order issued on January 14, 2009, the judge found that the Commonwealth's representation in its certificate of compliance that it had made "reasonable inquiry" concerning the existence of additional police reports was "knowingly false and made in bad faith." The judge concluded that the Commonwealth's failure to inquire of the police about additional reports violated rule 14 (a) (3), and that such failure was the equivalent of violating a court order.[6] The judge further concluded that, although the false representation did not prejudice the defendant, this type of misconduct, if permitted, had the potential to prejudice all defendants who appeared in the District Court. As such, recognizing that he had substantial discretion with respect to the imposition of a sanction, the judge determined that a "severe monetary penalty" against the Commonwealth was appropriate. The Commonwealth filed a notice of appeal. It also filed a motion for reconsideration, which was denied.

On February 27, 2009, the Commonwealth filed a petition for extraordinary relief pursuant to G. L. c. 211, § 3, in the county court,[7] and a single justice stayed the District Court's order dated January 14, 2009, imposing a $5,000 sanction on the Commonwealth. On December 1, 2009, the single justice reserved and reported the case to the full court without decision.[8]

---

[6]The judge also concluded that the ADA violated Mass. R. Prof. C. 3.3 (a) (1), 426 Mass. 1383 (1998), by falsely representing to the court that he had made a reasonable inquiry. Rule 3.3 (a) (1) provides, "A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal . . . ."

[7]In its petition, the Commonwealth stated that the judge imposed a $5,000 sanction because the Commonwealth omitted from its discovery materials the birth dates of two potential witnesses and a copy of Incident Supplement #7008876-1, thereby establishing that the Commonwealth failed to make "reasonable inquiry" concerning all items subject to discovery. We read the judge's decision as imposing a $5,000 sanction only on the basis of the unproduced police report. Although the judge makes passing reference to the missing birth dates in his findings of fact, sanctions based on that oversight were considered and denied by a different District Court judge in an earlier proceeding.

[8]The underlying criminal case has been stayed at the request of the defendant pending the resolution of the present matter.

2. *Rule 14.* Rule 14 (a) (1) (A) (vii) provides that the prosecution "shall disclose to the defense, and permit the defense to discover, inspect and copy . . . at or prior to the pretrial conference . . . [m]aterial and relevant police reports . . . ." Rule 14 (a) (1) (C) states that this requirement, along with the numerous other provisions relating to mandatory discovery for the defendant and reciprocal discovery for the prosecution, "shall have the force and effect of a court order, and failure to provide discovery pursuant to them may result in application of any sanctions permitted for non-compliance with a court order under subdivision 14 (c)." Another significant component of the procedures for pretrial discovery is set forth in rule 14 (a) (3), which states:

> "When a party has provided all discovery required by this rule or by court order, it shall file with the court a Certificate of Compliance. The certificate shall state that, to the best of its knowledge *and after reasonable inquiry,* the party has disclosed and made available all items subject to discovery other than reports of experts, and shall identify each item provided. If further discovery is subsequently provided, a supplemental certificate shall be filed with the court identifying the additional items provided." (Emphasis added.)

To the extent that a party fails to comply with its discovery obligations, sanctions may be imposed under rule 14 (c). Section (1) of rule 14 (c) states that "[f]or failure to comply with any discovery order issued or imposed pursuant to this rule, the court may make a further order for discovery, grant a continuance, or enter such other order as it deems just under the circumstances."

"The purpose of mandatory discovery is to encourage full pretrial discovery, increase what will be discovered by both sides, and promote judicial efficiency." *Commonwealth* v. *Green,* 72 Mass. App. Ct. 903, 903 n.1 (2008). See Reporters' Notes to Mass. R. Crim. P. 14, Mass. Ann. Laws, Rules of Criminal Procedure, at 1480-1481 (LexisNexis 2010-2011). Sanctions for noncompliance pursuant to rule 14 (c) are a mechanism for protecting a defendant's right to a fair trial. See *Commonwealth* v. *Mason,* 453 Mass. 873, 879 (2009). We have stated that the remedy for prosecutorial misconduct in a particular case should

be tailored to cure the prejudice to a defendant. See *Commonwealth* v. *Cronk*, 396 Mass. 194, 199 (1985); *Commonwealth* v. *Hine*, 393 Mass. 564, 573 (1984). As such, "[s]anctions for noncompliance with discovery are within the judge's discretion." *Commonwealth* v. *Giontzis*, 47 Mass. App. Ct. 450, 459 (1999). See *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 307 (1984); *Commonwealth* v. *Baldwin*, 385 Mass. 165, 177-178 (1982).

3. *Discussion.* The Commonwealth contends that because there was no intentional misconduct by the ADA with respect to the prosecution's discovery obligations, and because there was no prejudice to the defendant where defense counsel was in possession of the unproduced police report well before the trial date, the judge's imposition of a $5,000 sanction was unwarranted and unjust. The Commonwealth does not challenge the fact that it was required to provide the defendant with Incident Supplement #7008876-1 pursuant to rule 14 (a) (1) (A). It merely characterizes the ADA's failure to do so as an inadvertent mistake. In our view, the Commonwealth misconstrues the scope of its discovery obligation under rule 14.

What the Commonwealth fails to acknowledge is that, pursuant to rule 14 (a) (3), it had an obligation of "reasonable inquiry," and that, in this case, none was made. See *Commonwealth* v. *Martin*, 427 Mass. 816, 823 (1998) (prosecution had duty of inquiry regarding existence of scientific tests conducted by Commonwealth's crime laboratory, and discovery obligation not satisfied merely by turning over information contained in prosecutor's own files). At the very least, even a cursory reading of Incident Report #7009093 would have informed the ADA that the defendant had reported an assault (Incident Report #7008876) to the Cambridge police department on October 20, 2007, and that further inquiry was in order. Notwithstanding the fact that the ADA here missed this reference, a prosecutor's belief that no inquiry is necessary or required in the circumstances of a particular case, based only on the prosecutor's assumption that he already has all of the items and information subject to discovery, does not comport with rule 14 (a) (3).

The language of rule 14 (a) (3) does not limit the duty of inquiry to instances where a prosecutor becomes aware that additional discoverable materials may exist. "Reasonableness" is the

only limitation on the prosecutor's duty of inquiry. As such, it is incumbent on an ADA to ask a police prosecutor, or other similar official, whether *all* discoverable materials relating to a particular case have been given to the Commonwealth. See *Commonwealth* v. *Martin, supra* at 824 ("A prosecutor's obligations extend to information in possession of a person who has participated in the investigation or evaluation of the case and has reported to the prosecutor's office concerning the case"); *Commonwealth* v. *St. Germain*, 381 Mass. 256, 261 n.8 (1980). Only with such an inquiry can the prosecutor make an accurate and true representation on the certificate of compliance. Here, although the ADA seems to have misunderstood the import of rule 14 (a) (3), and his obligations thereunder, the prosecutor plainly knew that he did not make a "reasonable inquiry" as to any outstanding discovery, even if he were operating under a misapprehension that he already was in possession of the relevant police reports. See note 12, *infra*. By signing the certificate of compliance, which stated that the Commonwealth had made reasonable inquiry, the ADA made a false representation to the court.

That said, there is no evidence in the record to support the judge's finding that the ADA's representation in the certificate of compliance was "made in bad faith." See *Commonwealth* v. *Donovan*, 395 Mass. 20, 24 (1985). Cf. *Spiegel* v. *Beacon Participations, Inc.*, 297 Mass. 398, 416 (1937) ("Bad faith" is not simply bad judgment or negligence; "bad faith" suggests "a dishonest purpose or some moral obliquity[,] [a] conscious doing of wrong [or] a breach of a known duty through some motive of interest or ill will"). The record indicates, at worst, that the Commonwealth did not conduct a "reasonable inquiry" because the ADA erroneously believed that he already possessed all of the relevant police reports, and, therefore, in his view, further inquiry was unnecessary. See note 12, *infra*. As a consequence, the ADA further thought, albeit mistakenly, that he had provided to the defendant all items subject to discovery. There is no suggestion in the record that the Commonwealth was deliberately attempting to withhold information from the defendant. See *Commonwealth* v. *Reynolds*, 429 Mass. 388, 398 (1999) (bad faith exists when discovery violation motivated by desire to gain tactical advantage). While the ADA's conduct regarding the Commonwealth's discovery obligations was

negligent, we cannot conclude that the ADA was acting in bad faith.

Under rule 14 (c), a judge can impose a variety of sanctions on the Commonwealth for failure to comply with pretrial discovery rules.[9] See, e.g., *Commonwealth* v. *Lam Hue To, supra* at 310 (grant of mistrial followed by new trial is typical relief where defendant is prejudiced by prosecutor's failure to properly disclose exculpatory evidence); *Commonwealth* v. *Douzanis*, 384 Mass. 434, 436 (1981) (dismissal of indictment may be proper remedy for Commonwealth's failure to comply with discovery order); *Commonwealth* v. *Giontzis*, 47 Mass. App. Ct. 450, 456-462 (1999) (judge properly limited scope of testimony from Commonwealth's rebuttal expert witness where Commonwealth failed to disclose appearance by such witness in violation of discovery order). As we have stated, sanctions pursuant to rule 14 (c) are designed to protect a defendant's right to a fair trial. See *Commonwealth* v. *Mason*, 453 Mass. 873, 878-879 (2009). To that end, such sanctions, tailored to cure any prejudice to the defendant resulting from a discovery violation, are remedial, not punitive, in nature. See *Commonwealth* v. *Carney, ante* 418, 427-428, (2010). Here, however, the judge imposed a $5,000 sanction on the Commonwealth, the purpose of which was not to ensure that the defendant received a fair trial but, as the judge stated, to penalize the Commonwealth for its misconduct. While punitive monetary sanctions are permitted in some instances under the Massachusetts Rules of Criminal Procedure, they are not contemplated under rule 14 (c) (1), given its remedial purpose.[10] See *Commonwealth* v. *Durham*, 446 Mass. 212, 221, cert. denied, 549 U.S. 855 (2006) (Supreme Judicial Court is final arbiter of what procedural rules mean and permit).

The imposition of a punitive monetary sanction on counsel, not on the party that counsel represents, is permitted under Mass. R. Crim. P. 48, 378 Mass. 923 (1979), which states that

[9]Sanctions pursuant to Mass. R. Crim. P. 14 (c), as appearing in 442 Mass. 1518 (2004), pertain to the failure to comply with a discovery order or with the procedures for mandatory discovery. Rule 14 (c) makes no specific mention of the certificate of compliance.

[10]Reasonable costs may be permitted under rule 14 (c) (1) as a remedial sanction for a discovery violation to ensure that a defendant receives a fair trial. See *Commonwealth* v. *Carney, ante* 418, 427-428 (2010). Here, the $5,000 sanction was the equivalent of a fine, not costs.

"[a] *wilful* violation by counsel of the provisions of these rules or of an order issued pursuant to these rules shall subject counsel to such sanctions as the court shall deem appropriate, including citation for contempt or the imposition of costs or a *fine*" (emphasis added). Conduct is wilful "when the actor intends both the conduct and its harmful consequences." *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 352 (1990). See *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 443 (1983) (wilful conduct is intentional, not thoughtless or accidental). Here, the judge did not impose the $5,000 sanction pursuant to rule 48, nor could he have, given that nothing in the record suggests that the ADA's violation of rule 14 was wilful.

The remedy for prosecutorial misconduct in a particular case should be tailored to the injury suffered. See *Commonwealth* v. *Cronk*, 396 Mass. 194, 199 (1985); *Commonwealth* v. *Hine*, 393 Mass. 564, 573 (1984). Here, the ADA's mistakes did not result in any prejudice to the defendant where defense counsel already had secured a copy of the unproduced police report from his client well before the trial date. See *Commonwealth* v. *Gonzalez*, 437 Mass. 276, 280 (2002), cert. denied, 538 U.S. 962 (2003) (exclusion of Commonwealth's evidence for failure to provide discovery was inappropriate sanction where defendant did not demonstrate prejudice to case and nothing indicated that Commonwealth had acted intentionally or in bad faith); *Commonwealth* v. *Schand*, 420 Mass. 783, 789-790 (1995) ("There can be no prejudice when the contents of a police report are known to the defense"). Defense counsel conceded that his client suffered no prejudice from the Commonwealth's failure to provide her with Incident Supplement #7008876-1, and the judge stated that the defendant's rights had not been prejudiced. In the circumstances of this case, we conclude that the Commonwealth's failure to comply with discovery procedures set forth in rule 14 did not result in any harm to the defendant that deprived her of the right to a fair trial.[11]

As a final matter, contrary to the spirit of the Massachusetts

---

[11]As a general matter, a judge may find a party to be in civil contempt by reason of the party's failure to comply with a court order, and the judge may impose a continuing fine on the party to compel compliance with the order. See *Commonwealth* v. *Rape Crisis Servs. of Greater Lowell, Inc.*, 416 Mass. 190, 192-193 (1993). "Unlike a criminal contempt which is punitive, to

Rules of Criminal Procedure, it becomes apparent from reading the transcript of the February 12, 2008, pretrial hearing[12] that defense counsel, an officer of the court, engaged in a game of "gotcha" with respect to the unproduced police report. Pursuant to Mass. R. Crim. P. 11, as appearing in 442 Mass. 1509 (2004), the prosecuting attorney and defense counsel shall appear before the court for a pretrial hearing to resolve various preliminary matters. As the Reporters' Notes explain, because rule 11 is

---

vindicate the authority of the court, a civil contempt order is intended to be remedial and for the benefit of an aggrieved party." *Labor Relations Comm'n* v. *Fall River Educators' Ass'n*, 382 Mass. 465, 475 (1981). See *Mahoney* v. *Commonwealth*, 415 Mass. 278, 284-285 (1993) (sanction is remedial where party can avoid sanction by performing affirmative act required by court order). See also *L.F.* v. *L.J.*, 71 Mass. App. Ct. 813, 823 (2008). Coercive sanctions "look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order . . . by setting forth in advance the penalties the court will impose if the party deviates from the path of obedience." *Labor Relations Comm'n* v. *Fall River Educators' Ass'n, supra* at 476, quoting *Latrobe Steel Co.* v. *United Steelworkers Local 1537*, 545 F.2d 1336, 1344 (3d Cir. 1976). Such relief would not have been warranted in the present case because the defendant already had in her possession Incident Supplement #7008876-1.

[12]The following exchange occurred during the February 12, 2008, pretrial hearing:

| | |
|---|---|
| DEFENSE COUNSEL: | "Judge, I'm assuming that discovery is complete from the Commonwealth?" |
| ADA: | "Yes, I believe it is, Your Honor. Everything we've had, we've turned over." |
| DEFENSE COUNSEL: | "Well that's not the question." |
| ADA: | "Everything we know of in existence in this case has been turned over, Your Honor." |
| DEFENSE COUNSEL: | "And we include the police as well as —" |
| ADA: | "As far as I know Your Honor the police have provided us with all of the documentation that they have." |
| DEFENSE COUNSEL: | "And they've made the reasonable inquiry?" |
| THE JUDGE: | "I'm not going to make the Commonwealth go through the recitation. They're making a representation that they've fulfilled their discovery obligations." |
| DEFENSE COUNSEL: | "Well Judge, its — We'll see; that's all I'm going to say right now." |
| THE JUDGE: | "Well it's your obligation if you have a specific request that you don't think has been complied with, this is the time to raise it." |
| DEFENSE COUNSEL: | "No, Judge, I'll leave it just the way it is." |

"designed to promote the speedy and orderly disposition of cases at a time certain which is most convenient to all parties," the rule "calls upon defendants' counsel to aid the court in the disposition of all preliminary motions and other matters relative to pending cases." Reporters' Notes to Mass. R. Crim. P. 11, Mass. Ann. Laws, Rules of Criminal Procedure, at 1409 (Lexis-Nexis 2010-2011). Based on his colloquy with the judge, it is evident that defense counsel was aware that the Commonwealth had not fulfilled its discovery obligation (given that defense counsel already had Incident Supplement #7008876-1 in his possession), and yet he declined to provide any further information on the matter, either to the judge or the ADA, choosing instead, after the hearing had ended, to request the imposition of sanction on the Commonwealth. While the failure to comply with rule 14 rests squarely on the shoulders of the Commonwealth, the conduct of defense counsel in this matter fell far short of exemplary and tended to mislead the judge.

4. *Conclusion.* For all of the foregoing reasons, we conclude that the judge abused his discretion when he imposed a $5,000 sanction on the Commonwealth for failing to comply with its pretrial discovery obligations under rule 14. Accordingly, we remand the case to the county court for entry of a judgment vacating the order of the District Court.

*So ordered.*